

THE NATHANSON LAW FIRM
ATTORNEYS AND COUNSELORS AT LAW

| | |
|---|---|
| 135 S. LaSalle Street | 8326 E. Hartford Drive |
| Suite 4000 | Suite 101 |
| Chicago, IL 60603 | Scottsdale, AZ  85255 |
| 312-448-3167 | (480) 419-2578 |
| 480-419-4136 (FAX) | (480) 419-4136 (FAX) |
| philipj@nathansonlawfirm.com | |

January 3, 2022

**VIA ECF**
MOLLY C. DWYER
Clerk of Court
United States Court of Appeal for the Ninth Circuit
P.O. Box 193939
San Francisco, California 914419-3939

  Re: *Alyssa Jones v. Riot Hospitality Group LLC*, No. 20-15407
   Oral Argument Scheduled for February 7, 2022, in Phoenix, Arizona

To the Honorable Judges of the United States Court of Appeal for the Ninth Circuit:

  We write to respond to the supplemental letter brief submitted by appellees, which letter is a transparent attempt to reiterate and reinforce the Defendants' "discovery dispute" arguments contained in their appellate Brief.  Hoping for a dismissal of this appeal on grounds of appellate jurisdiction, appellees continue to chant the same litany that this is a mere "discovery dispute" involving the production of documents containing text messages.   Indeed, Defendants claim that there are routine privilege issues awaiting ruling that are actually resolved already.

The issue of the text messages arose at the January 10, 2020, hearing [Transcript, 1/10/20, ER0061-ER0099, at pp. 5 – 32]. Defendants' counsel stated at that 1/10/20 hearing his premise for seeking more text messages:

> "We asked each one of the three witnesses, their fact witnesses, which are now all represented by the same law firm. We asked each one of them: Did you communicate with the plaintiff? Did you communicate via -- via direct message, via text message? It became quite apparent that there are **ongoing communications** with Chelsea Meyers, the plaintiff, Elle Foster, **about this case**, at least via text messages."

Transcript, 1/10/20, ER0061-ER0099, at p. 7 (emphasis added).

On page 11 of the 1/10/20 transcript, ER0061-ER0099, the District Court directed the parties to brief the issue. Defendants' counsel said on page 12 that Defendants "**would like these communications that haven't been produced to us too for impeachment purposes**…**that is really the only relief…we were planning to request**." (emphasis added) Thus, Defendants claimed they needed text message discussions between Plaintiff and her three witnesses, long after this lawsuit was filed, **about this case**, for impeachment purposes, which text messages were revealed at the depositions of Plaintiff and her witnesses. Defense counsel admitted these text messages "primarily" involve "impeachment evidence." On page 32, Defense counsel repeated that: "**I just want the documents for in the event we get to trial for impeachment purposes** …" [Transcript, 1/10/20, ER0061-ER0099, at pp. 11-12, 15, 32] (emphasis added). As quoted above, Defense counsel said he wanted for impeachment "**ongoing communications**" that were "**about this case**."

2

What actually happened after that, up to the present time, bears no relation to the foregoing oral request. Defendants parlayed an oral request for "**ongoing communications**" between Plaintiff and her three fact witnesses, that were supposed to be "**about this case,**" into a global hunt for text messages between Plaintiff and her current husband, and between Plaintiff and her minor child, as well as text messages with friends, spouses and business associates about everything occurring in the lives of Plaintiff and her witnesses, not just text messages "**about this case.**" This massive invasion of privacy involving the compelled seizure of cell phones, and the physical searching and copying of the entire contents of those cell phones, is what this appeal is about. That is why this is not a mere "discovery dispute" about documents.

Defense counsel and the "neutral" IT Specialist, K.J. Kuchta, and his firm, Digital Acuity, modified the procedure outlined in the District Court's March 4, 2020, and August 10, 2020, Orders that are the subject of this appeal, to obtain never before requested text messages, and the District Court with each subsequent Order since then ratified what occurred [Doc. 433, 443, 460, 465, 468]. As the Briefs of the parties and the record show, appellees' version of events amounts to a complete misrepresentation of what occurred here. What occurred below, pursuant to the two Orders on appeal, was directed by a so-called "neutral" IT Specialist, whom the District Court ordered to conduct a search of four cell phones, with search terms,

that the District Court ordered the Plaintiff and her three witnesses to produce to that Specialist.

Page 5 of Appellees' supplemental letter brief states that the District Court, at the November 18, 2021, hearing, "recalled requiring the parties to agree upon a **neutral** so as to preserve any privilege on behalf of plaintiff…" (emphasis added). And the absolutely amazing and astounding thing, in the view of Plaintiff's counsel, that this Court should be informed about since the filing of Appellants' Reply Brief, is that the Defendants, after initially dealing with that so-called "neutral" IT specialist in his capacity as a "neutral," then proceeded **to retain** that same Specialist as the Defendants' own expert witness in this case on spoliation!! Defense counsel dances around these events in his letter, but they deserve more mention than that.

On April 12, 2021, [Doc. 419], during a telephonic hearing with the District Court, Defense counsel orally asked the District Court for leave to file a spoliation motion, which request was granted [Doc. 418-419]. But Defense counsel did not tell the District Court at that point that he had already retained the "neutral" IT Specialist as Defendants' own expert witness on spoliation. Nor did Defense counsel ask the District Court then, or since then, for leave to disclose and use an expert witness for that spoliation motion. The time for defendants to disclose experts was set by Order of the District Court for September 27, 2019 [Doc. 157; 158], almost two years before the spoliation motion was actually filed. Nor did Defense

4

counsel, during that 4/12/21 hearing, ask the District Court for leave to retain as the Defense expert on spoliation the "**neutral**" IT specialist, K.J. Kuchta, who was initially directed to be retained by the District Court [Doc. 308, 315].

But when Defense counsel filed his August 26, 2021, spoliation motion for sanctions [Doc. 439] [Doc. 439-1, Ex. A and B] it contained an expert report from Mr. Kuchta [Doc. 439-1] prepared for Defendants as Defendants' own retained expert witness. That twenty-five page report contained numerous graphs and charts that had been specifically prepared for the expert report, and a conclusion that purported to be an expert opinion at the end of the report. That report was accompanied by a Declaration of Mr. Kuchta, who asserted that:

> "5. My firm and I were appointed as the **agreed upon forensic neutral** by the parties in the lawsuit styled Jones v. Riot Hospitality Group, LLC., et al., Case No. 2:17-CV-04612-PHX-GMS in or around March 2020, to facilitate compliance with the Court's March 4, 2020 Order (and subsequent orders) regarding electronic discovery and production.
>
> 6. **Subsequently, my firm and I were retained independently by Defendants** to perform an analysis of the cellular phone data of Plaintiff Alyssa Jones, Non-Party Witness Shea Watson, and Non-Party 'Witness Chelsea Myers, specifically related to a determination **related to potential spoliation of evidence and destruction of data**."

[Doc. 439-1, at p. 43](emphasis added).

When Plaintiff's counsel asked for the correspondence and emails between Defense counsel and Mr. Kuchta regarding the spoliation issue and the spoliation report prepared by Mr. Kuchta, Defense counsel initially refused to furnish those

documents to Plaintiff's counsel and said in an email in relevant part about Mr. Kuchta's company, Digital Acuity:

> "…Digital Acuity was retained to perform a separate statement of work at our request, apart from the engagement it had as the appointed specialist. Can you advise as to why you believe you are entitled to receive this information?"

[Doc. 473, Ex. 6, 10/18/21 Defense counsel email).

The District Court allowed Plaintiff to depose Mr. Kuchta for two hours, which deposition occurred on August 15, 2021 [Doc 471]. Mr. Kuchta testified that he called his spoliation work "Project Merry." (Dep. p. 20-23; 31-32)(Ex. 1-2). According to his deposition testimony, when he signed his August 19, 2021, Report on spoliation, he prepared that Expert Report [Doc. 439] [Doc. 439-1, Ex. A and B], **as a retained expert witness for the Defense on spoliation** (Dep. pp. 19; 29-31). Defense counsel's law firm asked Mr. Kuchta to undertake the spoliation project (Dep. at pp. 56-57), which obviously occurred while he was acting as a "neutral" Specialist in this case. The statement in the Statement Of Work section of the Engagement Letter about him acting as a forensic neutral for Project Merry was incorrect. He was, rather, according to his own deposition testimony, **acting as a retained defense expert witness in Project Merry, not as a forensic neutral** (Dep. pp. 29-31, 33). His transition from "neutral" Specialist to defense expert was not done with the consent of, or disclosure to, Plaintiff's counsel, although in other

cases Kuchta had received the consent of all parties to go from being a neutral Specialist to a party's retained expert witness (Dep. at pp. 53-55).

Significantly, Defendants and Kuchta used, and misused, the copied images from the cell phones of Plaintiff and her witnesses that were brought forward from Project Cheer (the Specialist project) to Project Merry (the spoliation project) (Dep. pp. 37-38). Defendants, with the copied images of the **entire** contents of the cell phones, the use of which were supposed to be limited to "impeachment" evidence from "ongoing" text message communications "about this case," under the two Orders on appeal in this Court, generated, long after the closure of discovery, a defense expert report on spoliation that asks for dismissal of this entire case. This misuse of the cell phones ordered to be produced in the District Court's March 4, 2020 and August 10, 2020, Orders amounts to more than a "discovery dispute."

Looking back retrospectively, the events that occurred before Defense counsel asked for leave to file a spoliation motion in April of 2021 show what the Defense has been up to. Nine months **before** the Kuchta expert spoliation report was filed, Plaintiff filed a Motion to Disqualify the "neutral" specialist, Mr. Kuchta, on November 12, 2020, due to what appeared to be his relationship with and bias in favor of Defense counsel [Doc. 391]. The District Court denied that motion to disqualify without prejudice [Doc. 396]. On November 16, 2020 [Doc. 396], the District Court entered an order that: "The relevant documents and accompanying privilege logs from the cell

phones belonging to Plaintiff Alyssa Jones, and witnesses Chelsea Myers and Shea Watson must be produced to Defendants by December 11, 2020."

Plaintiff had delivered her cell phone to the "neutral" IT Specialist on August 17, 2020, for forensic examination. The Specialist, however, with the approval of the District Court, informed Plaintiff's counsel that: the IT Specialist would copy or image the phone and submit the messages and materials from the three cell phones to Plaintiff's counsel via computer software with check boxes. The Watson and Meyers cell phones had been delivered to the Specialist on or around September 7, 2020 [Doc. 377-2]. The Specialist's software showed that the Plaintiff's cell phone generated search hits from the search terms in **39,463** pieces of evidence. The Specialist's software showed that the Watson cell phone generated search hits in **32,376** pieces of evidence. And the Specialist's software showed that the Meyers cell phone generated search hits in **6.745** pieces of evidence. The total pieces of evidence to be reviewed by Plaintiff and her counsel therefore added up to **78,584** [Doc. 371-3-6; 391-9]**,** and Plaintiff then had to check the boxes for those items as either relevant, not relevant or privileged in the Specialist's proprietary software. That was not, of course, what the District Court ordered.

During the September 22, 2020, hearing before the District Court, the "neutral" IT Specialist, Mr. Kuchta, informed the Court that he had submitted the results of his forensic examination of Plaintiff's phone on August 31st [Doc. 375-376](09/22/20,

transcript at p.17). When the District Court asked how many documents were responsive to the search terms on the phone, Mr. Kuchta initially said he did not have the specific number. Then he said 1000 and 50 hits [Doc. 375-376](Transcript at p.18). As it turned out, he was about 38,000 pieces short just as to the Plaintiff's phone. It is apparent that the nature and scope of this project was grossly underestimated and oversold by Defendants and Mr. Kuchta. As a result, Plaintiff was put in an almost impossible situation to review everything in the time frames the District Court had ordered based upon the assumption that the Court had received accurate information from Mr. Kuchta.

On December 3, 2020, Plaintiff's counsel and his staff had a 33-minute virtual meeting and training with the Specialist and his staff. Plaintiff was instructed by Kuchta to designate the messages and materials from the phones by checking software boxes as either relevant, not relevant or privileged, in the proprietary software used and furnished by the Specialist. Plaintiff did that and submitted those designations on a thumb drive to the Specialist on December 10, 2020. On December 10, 2020, after receiving the designations from Plaintiff's counsel, the Specialist emailed [Doc. 333, Ex. A] Plaintiff's counsel and informed Plaintiff's counsel that:

> "… we will provide the lists and the relevant documents to you first for a final review and approval."

But on December 15, 2020, Defense counsel informed Plaintiff's counsel and the Specialist via email that providing Plaintiff's counsel with .pdf files of what should be produced would, according to Defense counsel, violate the ESI Stipulation [Doc. 333, Ex. B]. But nothing in that ESI Stipulation prohibits Plaintiff's counsel from receiving .pdf files of the text messages from the Specialist pursuant to two specific Orders of the District Court, for purposes of review and preparation of privilege and relevance logs and compliance with the District Court's orders. Yet the so-called "neutral" Specialist obeyed the direction of Defense counsel. We now know why he did so.

So the problem became that the District Court's two orders speak in terms of what Plaintiff should and must produce, but the production, in the view of the "neutral" Specialist, was going to come from his IT firm. The District Court's orders required Plaintiff to produce documents containing text messages, but the "neutral" Specialist decided to create comprehensive Excel spreadsheets with all of the information from the cell phones (see an attached example of such a spreadsheet). The Specialist intended to, and did, produce the relevant, not relevant and privileged spreadsheets on his own. There were no printed text message documents given to Plaintiff's counsel to produce; only the spreadsheets with tens of thousands of lines or cells that were created by Mr. Kuchta at the obvious direction of Defense counsel. No .pdf documents were sent by the Specialist to Plaintiff's counsel for Plaintiff's counsel to produce.

Very truly yours,

Philip J. Nathanson